# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| PNC Bank, National Association, successor to National City Bank, successor in interest to Mid America Bank, fsb<br><br>Plaintiff,<br><br>v.<br><br>Chicago Title Land Trust Co. As Trustee u/t/a dated Sept. 23, 2004 and known as Trust No. 17571; Donna M. Morales,<br><br>Defendants. | Case No.<br><br>Assigned Judge:<br><br>Magistrate Judge: |

## LOST NOTE AFFIDAVIT

I, Arlene Foster, being first duly sworn on oath depose and state that if sworn as a witness, I would testify as follows:

1. All of the facts stated in this Affidavit are true and correct and of my own personal knowledge, and if sworn as a witness I could testify competently thereto.

2. I am a Vice President with Plaintiff, PNC Bank, National Association, successor to National City Bank, successor in interest to Mid America Bank, fsb ("Plaintiff"), and that in such capacity I am familiar with the books and records of the Plaintiff; I have personally examined the same, and I am duly authorized to make this Affidavit on behalf of the Plaintiff.

3. This Affidavit is made for the purpose of proving and verifying that despite a diligent search by Plaintiff to locate the executed Note between Plaintiff and Defendant Chicago Title Land Trust Co. As Trustee u/t/a dated Sept. 23, 2004 and known as Trust No. 17571 ("Borrower"), the original executed Note, or a copy thereof, cannot be found.

4. I have reviewed the books and records of the Plaintiff and am familiar with same. The

books and records of Plaintiff reflect that on or about October 20, 2004 Plaintiff extended credit to Borrower in the original principal amount of $260,000.00. Further, the books and records of Plaintiff reflect that said extension of credit was evidenced by a certain Promissory Note dated October 20, 2004 and executed October 21, 2004 from Borrower to Mid America Bank, fsb in the amount of $260,000.00 (the "Note"). PNC Bank, National Association, is the successor by merger to National City Bank, which is the successor by merger to Mid America Bank, fsb.

5. Borrower was to make monthly payments on the Note until its maturity on November 29, 2029.

6. The Note is secured by a certain mortgage executed by Borrower in favor of Plaintiff on the real property commonly known as 12250 Greenwood, Blue Island, Illinois 60406. A true and correct copy of the Mortgage is attached to the Complaint as Exhibit B. The Mortgage specifically references the Note Comp Ex B at 1, ¶18(c)

7. That Plaintiff complied with and performed all of its duties and obligations under the terms of the Note.

8. That Borrower failed to make the monthly payment due on the Note for July of 2011 and thereafter.

10. Based on Borrower's default, on October 18, 2011, Plaintiff notified Borrower of its default under the Note and of Plaintiff's intention to accelerate the Note. A true and correct copy of Plaintiff's demands is attached to the Complaint as Exhibit C.

11. Despite a diligent search by Plaintiff, Plaintiff has not been unable to locate the original executed Note, or a copy thereof, at this time. Plaintiff's records contain the attached copy of the original Note, however it is missing its exculpatory and signature page. See Exhibit 1.

WHEREFORE, Affiant further sayeth naught.

*Arlene Foster, VP*
Arlene Foster, Vice President
PNC Bank, National Association, successor to National City Bank, successor in interest to Mid America Bank, fsb

I, Arlene Foster, having been first duly sworn on oath, state that I have read the foregoing Affidavit and believe the contents therein are true, in substance and fact.

*Arlene Foster, VP*
Arlene Foster, Vice President
PNC Bank, National Association, successor to National City Bank, successor in interest to Mid America Bank, fsb

SUBSCRIBED AND SWORN TO
before me this /27TH day
of December, 2011.

_____
NOTARY PUBLIC

JAMES A. RHEA
NOTARY PUBLIC
STATE OF OHIO
Comm. Expires
August 12, 2013
Recorded in
Summit County

Patrick D. Lamb
Matthew L. Hendricksen
CROWLEY & LAMB, P.C.
221 North LaSalle Street, Suite 1550
Chicago, Illinois 60601
(312) 670-6900
Attorney No. 41373

Page 3 of 3



## PROMISSORY NOTE

$260,000.00      October 20, 2004      0540915271

PROPERTY ADDRESS: 12250 Greenwood, Blue Island, Illinois 60406

1. FOR VALUE RECEIVED, the undersigned, Chicago Title Land Trust Company, not personally but as Trustee Under Trust Agreement Dated September, 23 2004, and known as Trust Number 17571 (herein called "Borrower") promises to pay to the order of Mid America Bank, fsb a Federal Savings Bank (herein called "Lender") in the manner provided herein the principal sum of Two Hundred Sixty Thousand and No/100 Dollars ($260,000.00), together with interest prior to maturity on the balance of principal remaining from time to time unpaid at the respective rates set forth below and interest after maturity on such balances at the Default Rate specified in Section 6 hereof (in each case computed daily on the basis of a 360-day year for each day all or any part of the principal balance hereof shall remain outstanding), principal and interest hereon being payable as hereinafter provided.

2. The Lender may collect a "late charge" of Seven (7%) percent of any installment payment of principal and of interest which is not paid on or before the date said payment is due or within fifteen (15) days after the due date thereof.

3. Payments upon this Note shall be made as follows:

(a) On the first day of December 2004 and on the first day of each month thereafter up to and including the Maturity Date, the Borrower shall pay principal and interest in arrears on the unpaid principal balance. The amount of the initial principal and interest payments will be in the amount of One Thousand Five Hundred Ninety Six 62/100 Dollars ($1,596.62). This amount may change. Interest shall be calculated pursuant to paragraph 4 of this Note.

(b) The unpaid principal balance outstanding hereon together with all accrued and unpaid interest thereon shall be due and payable without notice or grace on November 1, 2029 (herein called the "Maturity Date").

(c) All payments on account of the indebtedness evidenced by this Note shall be first applied to any costs and expenses incurred by the Lender pursuant to the terms of the Note and Mortgage, and then to any other indebtedness secured by the Mortgage bearing even date herewith, and then to late charges due to the Lender, and then to interest on the unpaid principal balance hereof, and the remainder to principal.

4. The Note provides for an initial interest rate of five and one half (5.500%) per annum. The Note provides for changes in the interest rate (the rate of interest which the Lender may charge at any given time until the Maturity Date is hereinafter referred to as the "Interest Rate"), and the monthly payments as follows:

(A) Change Date

The Interest Rate may change on the first day of November 2009, and on the same date every twelve (12) months thereafter. Each date on which the Interest Rate may change is called a "Change Date."

(B) The Index

Beginning with the first Change Date, the Interest Rate will be based on an Index. The "Index" is the weekly average yield on United States Treasury securities adjusted to a constant maturity of one (1) year, as made

1



available by the Federal Reserve Board. The most recent Index figure available as of the date 45 days before the Change Date is called the "Current Index."

If the Index is no longer available, the Lender will choose a new index which is based upon comparable information. The Lender will give the Borrower notice of this choice.

(C)   Calculation of Changes

Before each Change Date, the Lender will calculate a new Interest Rate by adding three and one quarter percent (3.25%) to the Current Index. The Lender will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limit stated in Section 4(D) below, this rounded amount will be the new Interest Rate until the next Change Date.

The Lender will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that the Borrower is expected to owe at the Change Date in full on the Maturity Date at the new Interest Rate in substantially equal payments. The result of this calculation will be the new amount of the Borrower's monthly payment.

(D)   Limits on Interest Rate Changes

The Interest Rate the Borrower is required to pay at the first Change Date will not be greater than 7.500% or less than 5.500%. Thereafter, the Interest Rate will never be increased or decreased on any single Change Date by more than two percentage points (2.00%) from the rate of interest the Borrower has been paying for the proceeding twelve months. The Interest Rate will never be greater than 11.500% and the Interest Rate will never be less than 5.500%.

(E)   Effective Date of Changes

The new Interest Rate will become effective on each Change Date. The Borrower will pay the amount of the new monthly payment beginning on the first monthly payment date after the Change Date until the amount of the monthly payment changes again.

(F)   Notice of Changes

The Lender will deliver or mail to the Borrower a notice of any changes in the Interest Rate and the amount of the monthly payment before the effective date of any change. The notice will include information required by law to be given to the Borrower and also the title and telephone number of a person who will answer any questions the Borrower may have regarding the notice.

5.   Payments upon this Note shall be made (a) at such place as the Lender may from time to time in writing appoint, provided that in the absence of such appointment, such payments shall be made at the offices of Mid America Federal Savings Bank, 55th & Holmes, Clarendon Hills, Illinois 60514 and (b) in lawful money of the United States of America which shall be legal tender for public and private debts at the time of payment.

6.   In the event that there shall occur:

(a)   Any default hereunder;

(b)   Maturity of the indebtedness evidenced hereby whether by passage of time or otherwise;

2

(c) Any violation or default of the covenants and obligations set forth in the Mortgage or any other security agreement executed by the Borrower and bearing even date herewith.

then and in any such event, the entire principal balance hereof shall thereafter bear interest at the rate of 2% per annum above the Interest Rate in effect as provided in paragraph 4 herein (herein called the "Default Rate"), provided said default is not cured within thirty (30) days after written notice for monetary default, and thirty (30) days for all other defaults after written notice.

7. This Note is given to evidence an actual loan in the above amount and is the Note referred to in and secured by a Mortgage bearing even date herewith creating a lien upon the property described therein, and certain other security instruments bearing even date herewith and executed by the Borrower.

8. The Borrower has the right to make prepayments upon any and all amounts due under this Note, so long as the Borrower is not in default under any of the loan documents and Lender may apply any prepayments by the Borrower as provided in paragraph 3 herein and pursuant to the Mortgage. In the event that in any calendar year prior to November 1, 2009, the Borrower shall make any prepayment or prepayments of principal to the Lender which shall reduce the outstanding loan balance by an amount equal to or in excess of twenty (20%) percent of the original principal sum evidenced by this Note, then the Lender may charge and the Borrower shall pay a prepayment penalty as follows:

| Months | Penalty (as a percentage of the original sum evidenced by the Note) |
|---|---|
| 1 – 24 | 3.00% |
| 25 – 48 | 2.00% |
| 49 – 60 | 1.50%. |

From and after November 1, 2009, the loan may be repaid without penalty.

9. At the election of the Lender, and without notice, the principal sum remaining unpaid hereon, together with accrued interest thereon, shall be and become at once due and payable at the place herein provided for payment, (a) in the case of default for thirty (30) days after written notice in the payment of principal or interest hereon when due in accordance with the terms hereof, or (b) upon the occurrence of any Event of Default hereunder or under the terms of the Mortgage or any other security instrument executed by the Borrower and bearing even date herewith, which remains uncured after expiration of the applicable grace period, or after thirty (30) days, whichever is the lesser period.

10. Borrower represents that the loan evidenced by this Note is a business loan within the purview and intent of the Illinois Interest Act (815 ILCS 205/4), transacted solely for the purpose of carrying on or acquiring the business of the Borrower as contemplated by said Act.

11. In the event that this Note is placed in the hands of an attorney-at-law for collection after maturity, or upon default, or in the event that proceedings at law, in equity, or bankruptcy, receivership or other legal proceedings are instituted in connection herewith, or in the event that this Note is placed in the hands of an attorney-at-law to enforce any of the rights or requirements contained herein or in the Mortgage or Assignment or other instruments given as security for, or related to, the indebtedness evidenced hereby, the Borrower hereby agrees to pay all reasonable costs of collecting or attempting to collect this Note, including without limitation, reasonable attorneys' fees (whether or not suit is brought), in addition to all principal, interest and other amounts payable hereunder; all of which shall be secured by the Mortgage and security instruments executed by the Borrower and bearing even date herewith.

12. This Note shall be governed by laws of the State of Illinois.

13. All parties hereto severally waive presentment for payment, notice of dishonor, protest and notice of protest.

IN WITNESS WHEREOF, _____ not personally but as Trustee as aforesaid, has caused these presents to be signed by its _____ President, and its corporate seal to be hereunto affixed and attested by its _____ Secretary, this _____ day of October, 2004.

Borrower: Chicago Title Land Trust Company, personally but as Trustee Under Trust Agreement Dated September 23, 2004 and known as Trust Number 17571.

_____
As Trustee as aforesaid and not personally

ATTEST: Attestation not required
pursuant to corporate by-laws.
_____   _____
Secretary          President

ATTACHED EXONERATION RIDER IS INCORPORATED HEREIN

SEE ATTACHED EXCULPATORY CLAUSE FOR SIGNATURE

STATE OF ILLINOIS )
                 ) SS
COUNTY OF        )

THE UNDERSIGNED, a Notary Public, in and for the county and state aforesaid, do hereby certify, that _____, personally known to me to be the _____ of Chicago Title Land Trust Company, not personally but as Trustee Under Trust Agreement Dated September 23, 2004 and known as Trust Number 17571, and _____ the _____ of said corporation and personally known to me to be the same persons whose names are subscribed to the foregoing instrument, appeared before me this day in person and severally acknowledged that as such _____ and _____ they signed and delivered the said instrument as the _____ and _____ of said corporation and caused the corporate seal of said corporation to be affixed thereto, pursuant to authority, given by the Board of Directors of said corporation, as their free and voluntary act, and as the free and voluntary act and deed of said corporation, for the uses and purposes therein set forth.

GIVEN UNDER MY HAND AND SEAL THIS ___ DAY OF OCTOBER, 2004.

Notary Public:       _____

My Commission Expires: _____

Pay to the Order of
Without Recourse
PNC Bank, National Association  Sigim Mid America Bank, FSB
Joshua D Bush
Document Custody Specialist

4